**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR426-016 |
| | ) | |
| HENRY POLK, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AND REPORT AND RECOMMENDATION**

Defendant Henry Polk is charged with one count of possession of a firearm by a convicted felon, one count of possession of intent to distribute marijuana, and one count of possession of a firearm in furtherance of a drug trafficking crime. Doc. 3 (Indictment). He filed a Motion to Suppress Evidence seized during a warrantless search of his vehicle, doc. 38, and a Motion to Suppress Statements made following that search, doc. 39. The Government opposes these Motions. Doc. 47. Defendant has also filed a Motion to allow his counsel to participate in voir dire, doc. 40, which the Government does not oppose, doc. 47 at 1, and a Motion for early disclosure of Jenks material, doc. 41, which the Government opposes, doc. 47 at 14. On August 12, 2026, the Court held a hearing on these motions. *See* doc. 59 (Minute Entry). For the

reasons explained below, Polk's Motions to Suppress should be **DENIED**. Docs. 38 & 39. His Motion to Allow Defendant to Participate in Voir Dire is **DENIED**. Doc. 40. His Motion for Early Disclosure of *Jencks* Material is **DENIED**. Doc. 41.

## Background

On April 12, 2025, around 9:00 p.m., Savannah Police Department ("SPD") Officer Cierra Houston and her training officer, Corporal Jansen Neff, responded to 3205 Bulloch Street for a report of an assault where the assailant brandished a weapon. Doc. 59-3 at 1-3 (Officer Cierra Houston's Crime Report); *see also* doc. 59 at 1 (Testimony of Corporal Neff). According to Officer Houston's Report, two individuals at the Bulloch Street location, Ms. Canteen and Ms. Thurman, identified Henry Tyler Polk as the person who hit Ms. Thurman and pointed a gun at both women after an altercation. *Id.* at 2. While Officers Houston and Neff investigated the Bulloch Street incident, other SPD officers, including Officer Tavaris Thornton, Officer Nathaniel Cherubin, and Corporal Bradley Wilber, arrived at a residential address affiliated with Polk, 803 Carver Street, Savannah, Georgia ("Polk's House"). *See, e.g.*, doc. 59-3 at 4-5 (Officer Thornton's

Crime Report); *id.* at 7-11 (Corporal Wilber's Crime Report). Corporal Wilber, Corporal Neff, and Officer Cherubin testified during the hearing. Doc. 59 at 1. Additionally, Defendant tendered Officer Cherubin's body-worn camera ("BWC") footage, doc. 59-1 (Def. No. 4), and the United States tendered Officer Houston's BWC footage, doc. 47-3, Officer Thornton's BWC footage, doc. 47-5, and Officer Wilbur's BWC footage, doc. 47-7.[1]

A review of Officer Thornton's BWC footage shows that he was the first officer on the scene at Polk's House, where he parked to wait on backup from Officer Cherubin. Doc. 47-5 at 1:05-1:45. After Officer Cherubin arrived, the two officers approached the residence. *Id.* at 3:20-4:12. The BWC footage from both officers shows that the residence is a single-family home with a driveway running along the left side of the home, extending through the yard to the sidewalk and public road. *Id.* at 4:08-4:12; *see also* Def. No. 4 at 0:53-0:56. The officers approached the residence via the driveway, walking towards the vehicle parked in the driveway closest to the public road, a gray Chevrolet Trailblazer SUV ("the Vehicle"). Doc. 47-5 at 4:05-4:15; *see also* Def. No.

[1] The Government's exhibits attached to its Response, doc. 47, were admitted as party of the evidentiary record during the hearing. *See* doc. 59 at 1.

4 at 0:56-1:00; doc. 59-3 at 7. There were two other cars parked in the driveway closer to the house, with the Vehicle parked the furthest from the house and backed in with the front facing the road. Doc. 47-5 at 4:05-4:15; Def. No. 4 at 0:56-1:00. Officer Thornton took approximately four steps from the sidewalk to the front of the Vehicle. Doc. 47-5 at 4:10-4:14; *see also* Def. No. 4 at 0:56-0:59. He then walked to the rear of the Vehicle and reported the licence tag number via his radio. Doc. 47-5 at 4:14-4:26.

Officers Thornton and Cherubin walked from the driveway to the front door of the home, Officer Thornton knocked and announced, "Savannah Police Department," and eventually Mr. Polk came outside. Doc. 47-5 at 4:26-6:25; Def. No. 4 at 1:16-3:05. Officers patted Polk down and Officer Thornton began questioning him about what had happened at the Bulloch Street location. Doc. 47-5 at 6:25-9:53; Def. No. 4 at 2:53-5:05. While Officer Thornton was questioning Polk on the front steps of the house, Officer Wilber arrived on the scene. Def. No. 4 at 7:33-7:47; doc. 47-7 at 0:32-0:45.

Officer Thornton and Polk remained on the front porch of the house, and Officer Wilber walked to the Vehicle, looking in the windows

with his flashlight. Doc. 47-7 at 3:15-4:25. Wilber reported to Officer Cherubin that he had seen what he believed to be marijuana inside the Vehicle. *Id.* at 4:43-5:12; Def. No. 4 at 12:18-13:28. Officer Cherubin then returned to the vehicle, looked through the windows using his flashlight, and identified the suspected marijuana. Def. No. 4 at 13:52-14:42. Officer Wilber asked Polk about the marijuana, about his history with narcotics, and about what other contraband might be in the Vehicle. Def. No. 4 at 22:40-24:30. Polk admitted to smoking marijuana and eventually agreed to let the officers have the key to the Vehicle. Def. No. 4 at 24:23-25:13. Officer Cherubin got the key from two women inside the house. Def. No. 4 at 26:00-26:30.

Officer Wilber used the key to open the Vehicle and conduct a search. Doc. 47-7 at 21:45-35:13. He found marijuana, a scale, plastic baggies, a Glock handgun, and cash. Doc. 59-3 at 7. The instant charges all arise from the contraband found in the Vehicle. *See generally* doc. 3. Defendant moves to suppress that evidence. Doc. 38. He also moves to suppress statements he made to the officers, arguing they were the result of the unlawful search. Doc. 39.

**Motion to Suppress Vehicle Search**

The Government bears the burden of showing that the warrantless search of the Vehicle was not unreasonable, *i.e.*, that the search falls under an exception to the warrant requirement. *See, e.g., United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983). The Government argues the search was lawful because the vehicle was located outside of the curtilage of Polk's home so the officers did not need a warrant to approach it. Doc. 47 at 3-4. Defendant disagrees, arguing the Vehicle was located within the home's curtilage. Doc. 38 at 10-11.

"[A]n individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home." *Oliver v. United States*, 466 U.S. 170, 178 (1984). Fourth Amendment protection extends, therefore, to the "curtilage" of a home. *Id.* at 180. Subject to a few exceptions, the Fourth Amendment prohibits law enforcement from entering a home or its curtilage to conduct a search without a warrant. *United States v. Walker*, 799 F.3d 1361, 1363 (11th Cir. 2015). The "automobile exception," which can, in some circumstances, justify a warrantless

search of a vehicle, does not permit a warrantless intrusion on a home or its curtilage. *Collins v. Virginia*, 584 U.S. 586, 597 (2018). Therefore, the validity of the officers' initial approach to the Vehicle and subsequent visual searches depends on whether the Vehicle was located within the curtilage of Polk's House.

In *United States v. Dunn*, the Supreme Court identified the factors to consider when determining whether an area falls within the curtilage of the home: "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." 480 U.S. 294, 300-01 (1987). The "central component of this inquiry" is "whether the area harbors the 'intimate activity associated with the sanctity of a man's home and the privacies of life' "; in other words, "whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Id.* at 300, 301 (quotations and citation omitted).

Sometimes, a driveway is considered part of the curtilage of a home. For example, in *Collins*, the Court found the "top portion of the driveway that sits behind the front perimeter of the house [and] enclosed on two sides by a brick wall about the height of a car and on a third side by the house" to be part of the curtilage. 584 U.S. at 593-94. However, it is not a *per se* rule, and the *Dunn* factors are still the relevant consideration. In a recent unreported case from the Eleventh Circuit, the appellate court applied the *Dunn* factors to a search conducted in a driveway, ultimately concluding the driveway was not within the "curtilage" of the home. *United States v. Stephen*, 823 F. App'x 751, 754-55 (11th Cir. 2020). There, the portion of the driveway at issue was not gated, covered, enclosed, or partly enclosed, it did not appear that any portion of the driveway was used as a "porch or patio or otherwise served as an extension of [the] home," the occupants of the home had made no effort to conceal the driveway from passersby, and the driveway formed part of the path that visitors would naturally take to walk to the front door. *Id.* at 755.

The application of the *Dunn* factors to the facts in this case show the Vehicle was not within the Polk House's curtilage. As to the first

factor, the proximity of the Vehicle to the home, the car was parked towards the end of the driveway, approximately four steps from the sidewalk, and further away from the home than the other cars in the driveway. For the second factor, the Vehicle was not within an enclosure, though it was bordered on one side by the neighbor's short chain-link fence. Despite the fence, the various angles of the BWC footage show that the Vehicle was easily seen from various publicly-accessible vantage points. For the third factor, as the Government observes, the sole use of this area of the driveway "would seem to be getting into and out of one's vehicle," which is not "intimate activity." Doc. 47 at 10. On the final factor, similar to the second, there is no evidence that the residents of the Polk House took any steps to protect the Vehicle from people passing by. It was parked only four steps off of the public sidewalk, easily viewed from multiple vantage points on the public street. The driveway here is much like the driveway in *Stephen*, 823 F. App'x at 755. The driveway was not gated, covered, or enclosed, no portion of the driveway was used as a porch or patio or otherwise served as an extension of the Polk House, the driveway was used for

parking cars, and the occupants of the Polk House had made no effort to conceal the driveway or the cars parked on it from passersby. *Id.*

Because the Vehicle was not located within the curtilage of the Polk House, the officers did not need a warrant to approach it, and once they approached it, the record shows that the contraband—marijuana—was in the officers' plain view. *See, e.g.*, *United States v. Gant*, 756 F. App'x 898, 900-901 (11th Cir. 2018) (citing *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006)). Officer Wilber believed it to be a large quantity of marijuana, questioned Polk about the marijuana, and obtained the key to the vehicle with Polk's consent after Polk admitted to smoking marijuana. The United States has borne its burden of demonstrating that the search of the vehicle was not unreasonable under the Fourth Amendment. The Motion to Suppress should, therefore, be **DENIED**. Doc. 38. Because the search was not unreasonable, the Court need not reach the United States' alternative argument regarding Polk's Fourth Amendment waiver. *See* doc. 47 at 12-13.

**<u>Motion to Suppress Statements</u>**

Defendant also moves to suppress his statements made to officers, arguing they "only developed reasonable or probable cause—and only confronted Mr. Polk—after unlawfully entering the curtilage and searching the vehicle." Doc. 39 at 2. Therefore, he argues, the statements are tainted and must be suppressed. *See generally id.* Because the Government has borne its burden of demonstrating that the officers' search of the vehicle was not unreasonable, Defendant's arguments fail. There was no illegal search to taint Polk's statements to the officers.

During the hearing, Defendant also raised an argument that the officers' original investigatory detention of Mr. Polk, when they were questioning him about the prior Bulloch Street incident, concluded during their questioning, so his prolonged detention was unreasonable. However, as discussed above, the officers identified a significant quantity of marijuana in the Vehicle which led to additional questioning, unrelated to the Bulloch Street incident. Based on multiple officers identifying the drugs by looking into the Vehicle's window, they had reasonable suspicion, if not probable cause, to detain

Mr. Polk and question him about those drugs. *See United States v. Jordan*, 635 F.3d 1181, 1186-87 (11th Cir. 2011) (discussing the reasonable suspicion required to conduct "brief seizures and investigatory detentions"). The Motion to Suppress Statements should, therefore, be **DENIED**. Doc. 39.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of

rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**<u>Motion for *Jencks* Material</u>**

Defendant also moves for an Order requiring the United States to disclose statements and materials pursuant to the *Jencks* Act prior to trial. Doc. 41. He cites only to the Court's "inherent discretion to prevent unnecessary time delays at the trial of this matter," to justify his request. *Id.* at 1.

Rule 16 of the Federal Rules of Criminal Procedure governs discovery in a criminal case. The Rule does not "authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. §3500." Fed. R. Crim. P. 16(a)(2). Section 3500, which is commonly known as the Jencks Act, in turn provides that no statement of a government witness shall be the subject of discovery or inspection "until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). Thus, a statement by a witness must be produced only "when the witness is tendered for cross-examination." *United States v. Jordan*, 316 F.3d

1215, 1252 (11th Cir. 2003). Defendant has provided no authority to justify the Court compelling Jencks Act production earlier than mandated by the Jencks Act's requirements. His motion is, therefore, **DENIED**. Doc. 41.

**Motion to Participate in Voir Dire**

Defendant asks that his counsel be permitted to participate in the voir dire examination of potential jurors during the trial of this case. Doc. 40. The longstanding practice in this District is for the presiding judge to conduct voir dire. The Defendant's motion does not provide sufficient grounds for departing from this standard practice. Polk may renew his request, or raise any other issues related to voir dire, with the District Judge at the appropriate time. The Motion to Allow Participation in Voir Dire is **DENIED**. Doc. 40.

**SO ORDERED AND REPORTED AND RECOMMENDED,** this 10th day of September, 2026.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA