**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>HENRY POLK,<br><br>Defendant. | CASE NO.: 4:26-cr-16 |

**O R D E R**

Currently before the Court is the Magistrate Judge's September 10, 2026, Report and Recommendation, (doc. 64), to which Defendant has filed objections, (doc. 66). The Magistrate Judge recommends that Polk's Motion to Suppress the warrantless search of his vehicle be denied. (Doc. 64, pp. 6—10.) The Magistrate Judge also recommends that Polk's Motion to Suppress Statements be denied, since that challenge was based on the challenged vehicle search. (Id., p. 11.) Additionally, the Magistrate Judge considered a supplemental argument raised by Defendant during the suppression hearing, regarding the officers' basis for their continued questioning of Defendant and determined that the officers' observation of marijuana in the vehicle provided sufficient reasonable suspicion, if not probable cause, to justify it. (Id., pp. 11—12.)

Defendant objects. (See generally doc. 66.) He first argues that the Magistrate Judge's factual recitation is "incomplete," though he clarifies he "does not contend that every fact recited therein is affirmatively incorrect." (Id., pp. 2—8.) Instead, he argues that the Report and Recommendation omits facts established by the body-worn camera evidence and the evidentiary record from the hearing. (Id.) "Whenever any party files a timely and specific objection to a finding of fact by a magistrate, the district court has an obligation to conduct a de novo review of

the record with respect to that factual issue." LoConte v. Dugger, 847 F.2d 745, 750 (11th Cir. 1988). The Court has done so here, reviewing the entire evidentiary record in considering Defendant's objections to the Report and Recommendation. The specific facts considered by the Court in resolving Defendants' objections are, where necessary, discussed more fully below.

Defendant next objects to the Magistrate Judge's determination that the vehicle at issue was parked outside the curtilage of Polk's residence. (Doc. 66, pp. 8—9; see also doc. 64 at 6—10.) Defendant does not argue that the Magistrate Judge applied the incorrect standard but argues that the Court should consider the full factual record, re-apply the required analysis from United States v. Dunn, 480 U.S. 294 (1987), and reach a different conclusion. (Doc. 66, pp. 8—9.) As the Magistrate Judge correctly explained, the Supreme Court in Dunn articulated the "central component" of the relevant inquiry, which is "whether the searched area harbors the 'intimate activity associated with the sanctity of a man's home and the privacies of life.'" 480 U.S. at300 (internal quotations and citation omitted). The Supreme Court also identified several factors to consider when making this determination: "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." Id., at 301.

Using the framework established by the Supreme Court, the Court has considered the Magistrate Judge's analysis, (doc. 64, pp. 8—10), the Defendant's objection, (doc. 66, pp. 8—9), the evidentiary record from the hearing, (see doc. 59), and the parties' original briefing, (docs. 38 & 47), and concurs with the Magistrate Judge's conclusion that the vehicle at issue was located outside of the curtilage of the home. The vehicle was parked at the end of the driveway, and the officers only took a few steps from the public sidewalk into the driveway before reaching the

vehicle. Defendant "does not dispute that the front portion of the vehicle was relatively close to the sidewalk." (Doc. 66, p. 3.) However, he argues that the rear of the vehicle was "approximately six paces" from the residence, and that the vehicle "was simultaneously near the public sidewalk and immediately adjacent to the residence." (Id.) While the Court acknowledges that the rear of the vehicle was approximately one car length from the house, the various angles provided by the body-worn camera footage in the record shows that it was closer to the public sidewalk than the home.

Even if the Court were to find that the first factor weighs in favor of finding that the vehicle was parked within the curtilage, which it does not, the remaining factors overwhelmingly tip the balance in favor of finding the vehicle was parked outside of the house's curtilage. Defendant does not challenge the Magistrate Judge's factual findings on those factors, and after a review of the evidentiary record the Court agrees that:

> [f]or the second factor, the Vehicle was not within an enclosure, though it was bordered on one side by the neighbor's short chain-link fence. Despite the fence, the various angles of the [body-worn camera] footage show that the Vehicle was easily seen from various publicly-accessible vantage points. For the third factor, as the Government observes, the sole use of this area of the driveway "would seem to be getting into and out of one's vehicle," which is not "intimate activity." Doc. 47 at 10. On the final factor, similar to the second, there is no evidence that the residents of the Polk House took any steps to protect the Vehicle from people passing by. It was parked only four steps off of the public sidewalk, easily viewed from multiple vantage points on the public street. . . . The driveway was not gated, covered, or enclosed, no portion of the driveway was used as a porch or patio or otherwise served as an extension of the Polk House, the driveway was used for parking cars, and the occupants of the Polk House had made no effort to conceal the driveway or the cars parked on it from passersby.

(Doc. 64, pp. 9—10.) Therefore, the Court concurs with the Magistrate Judge's articulation of the relevant standard and his application of that standard to the facts in this case.

Defendant also objects that the Report and Recommendation omits discussion of the existence of "a separate (unconnected to the driveway) paved and lighted walkway extending from

the public sidewalk to the front door." (Doc. 66, p. 2.) He argues the existence of an alternative walkway for visitors to use when approaching the home is material to whether the officers remained within the scope of any implied license to approach the residence. (Id.) However, the existence of this alternate pathway for pedestrian visitors to the home does not alter the balance of the Dunn factors, which, as discussed above, demonstrate that the vehicle at issue was not within the curtilage of the home. The authorities cited by Defendant in his original Motion relate to the scope of any license officers may have to use customary access routes when traversing property otherwise protected by the Fourth Amendment. (See doc. 38, pp. 10—11 (citing Florida v. Jardines, 569 U.S. 1, 6 (2013).) For example, in Jardines, the Supreme Court first determined that the officers' investigation "took place in a constitutionally protected area," so therefore focused on "whether it was accomplished through an unlicensed physical intrusion." 569 U.S. at 7. Here, for the reasons articulated above, the vehicle was located outside of the constitutionally protected area of the curtilage of the home. Therefore, the scope of any implied license to traverse the property via the separate walkway is immaterial to the officer's approach of the vehicle and does not alter the Dunn analysis. Defendant's objection as to the Report and Recommendation's determination that the vehicle was parked outside the curtilage of the home is **OVERRULED**. (Doc. 66, in part.)

Defendant also objects to the Report and Recommendation's conclusion that the officers, who were lawfully beside the vehicle, observed suspected marijuana in plain view. (Doc. 66, p. 9—10.) Specifically, he argues that the "factual predicate underlying the plain view analysis" is incomplete, since prior to Officer Wilber identifying, though the vehicle's windows, what he believed to be large amounts of marijuana, other officers had looked through the windows and did not see the contraband. (Id., at pp. 9—10.) The record before the Court demonstrates that

Officer Wilber identified marijuana in plain view through the windows of the vehicle and immediately reported it to the other officers on scene. (See doc. 64, pp. 4—5.) After that, Officer Cherubin also identified the suspected marijuana by looking through the vehicle's windows. (Id., p. 5.) Defendant does not dispute these facts but argues that since the other officers did not see the marijuana upon their initial check of the vehicle, the later observation of the marijuana cannot support a plain view determination. (Doc. 66, pp. 9—10.) Defendant also asks the Court to consider that the officers did not smell marijuana, (id., p. 6), which it has done. It does not alter the plain view analysis. Defendant's arguments are without merit and are therefore **OVERRULED**. (Doc. 66, in part). The Court concurs with the Magistrate Judge's determination that the officers, who did not require a warrant to approach the vehicle, observed suspected marijuana in plain view when they looked inside the vehicle's windows.

Next, the Court turns to Defendant's argument that the officers, who originally arrived at his house to investigate a separate incident, had exceeded the lawful scope and duration of their investigative detention based on that separate incident. (Doc. 66, pp. 10—11.) The Report and Recommendation determined that, upon identifying the suspected marijuana, the officers "had reasonable suspicion, if not probable cause, to detain Mr. Polk and question him about those drugs." (Doc. 64, pp. 11—12.) Defendant does not dispute that conclusion but argues the officers' actions prior to identifying the suspected drugs exceeded the lawful scope of their investigation. (Doc. 66, p. 10.) However, as discussed more fully below, a review of the body worn camera footage submitted by the Defendant shows that the officers on scene at Defendant's house were continuing to investigate the original incident when Officer Wilber reported to them that he had identified suspected drugs in the vehicle. (Doc. 59-1 (identifying Defendant's Exhibit 4 ("Def. Ex. 4") as "Body Worn Camera Footage of Officer Nathaniel Cherubin").)

The footage demonstrates, and Defendant concedes, that Officer Cherubin ended a telephone call with Officer Neff, an officer investigating the original incident, with an agreement that the officers at Defendant's house "would remain with Mr. Polk while the investigation at the other location continued." (Doc. 66, p. 5 (citing Def. Ex. 4, at 05:13-06:55).) Officer Cherubin, and other officers on the scene at Defendant's house, continued to question Defendant about the original incident, and Officer Cherubin reported to the other officers on scene that he was waiting on Officer Neff to make additional phone calls, and that he expected they would "probably get detectives out here." (Def. Ex. 4, at 11:10-11:20.) Within about one minute of that report, and before Officer Cherubin has any other call with Officer Neff about the investigation into the initial incident, Officer Wilber reported the suspected marijuana. (Id., at 12:13-12:20). The next time Officer Cherubin and Officer Neff spoke, Officer Cherubin reported that they have discovered a "felony amount of marijuana in this vehicle." (Id., 14:15-14:45). Therefore, the record before the Court demonstrates that the officers were continuing to investigate the original incident when the drugs were discovered. That Officer Neff eventually determined he had no probable cause to arrest Defendant related to the original incident does not alter the analysis. (Doc. 66, p. 5.) Therefore, Defendant's objection is **OVERRULED**. (Doc. 66, in part.) The Court agrees with the Magistrate Judge's conclusion that the officer's discovery of the marijuana, which occurred during their investigation into the original incident, provided ample support for their continued questioning of the Defendant. (Doc. 64, pp. 11—12.) The express restrictions on Defendant, raised by the Objection, occurred after the officers located the suspected marijuana, and do not alter the Court's analysis. (Doc. 66, p. 5 (citing Def. Ex. 4 at 16:22-19:20).)

Finally, the Court considers Defendant's objection regarding his consent. (Doc. 66, p. 7.) The Report and Recommendation found that, during the officer's questioning of Defendant about the suspected marijuana in the vehicle, officers "obtained the key to the vehicle with Polk's consent," and ultimately conducted a search of the vehicle using that key. (Doc. 64, pp. 5, 10.) Defendant argues the facts demonstrate his "acquiescence to the officers' announced assertion of authority" to search the vehicle, "rather than voluntary consent to search." (Doc. 66, pp. 11—12.) Defendant points to Officer Wilber's statements to him that "the vehicle was going to be searched regardless of whether he consented," and that, if he did not provide the key, officers would "bust the window." (Id., p. 11.) As the Eleventh Circuit has explained, "[a] consensual search is constitutional if it is voluntary; if it is the product of an essentially free and unconstrained choice." United States v. Spivey, 861 F.3d 1207, 1213 (11th Cir. 2017) (internal citations and quotations omitted). In making the determination, the Court must consider the totality of the circumstances. Id. In evaluating the totality of the circumstances underlying consent, the court should look at several indicators, including the presence of coercive police procedures, the extent of the defendant's cooperation with the officer, the defendant's awareness of his right to refuse consent, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found. United States v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001).

In considering the totality of the circumstances here, based on the factual record, the Court concurs with the Magistrate Judge's conclusion that the Defendant voluntarily provided the key to the officers. (Doc. 64, p. 10.) Defendant was cooperative with the officers throughout the encounter. Though as the investigation shifted to the presence of marijuana the officers instructed Defendant to remain on his front porch, the officers did not point any weapons at him, and Officer

Wilber's weapon, though present, was not pointed towards Defendant. See United States v. Espinosa-Orlando, 704 F.2d 507, 512-13 (11th Cir. 1983) (presence of weapons holstered or pointed at the ground did not render consent to search involuntary). Officer Wilber did tell Defendant that he would eventually get inside the vehicle to conduct a search, but as the Eleventh Circuit observed in United States v. Zapata, 180 F.3d 1237, 1241 (11th Cir. 1999), it has found consent to be voluntary even in circumstances where officers tell a defendant that, absent consent, they will attempt to obtain a search warrant, see United States v. Garcia, 890 F.2d 355, 361 (11th Cir. 1989), and in circumstances where officers tell a defendant they will "come back and 'dig the place up,'" United States v. Long, 866 F.2d 402, 405 (11th Cir. 1989). Based on a review of the totality of the circumstances surrounding Defendant's consent for the officers to obtain the key, the Court concurs with the Magistrate Judge's conclusion that the eventual search of the vehicle was not unreasonable under the Fourth Amendment. (Doc. 64, p. 10.)

For the foregoing reasons, Defendant's Objections are **OVERRULED**, (doc. 66), and the Court **ADOPTS** the Report and Recommendation, (doc. 64), as supplemented above, as its opinion. See 28 U.S.C. § 636(b)(1) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."). Polk's Motions to Suppress are **DENIED**. (Docs. 38 & 39.)

It now appearing that all pretrial motions in the above referenced case are resolved and that this case is ready for trial, the Court hereby DIRECTS the parties to confer and file their second status report **on or before October 26, 2026**, notifying the Court as to the current status of the case. The joint status report shall indicate whether (1) the parties are prepared to proceed to trial, and, if they are, list three potential dates for a status conference within the following 14 days; or,

(2) if the parties believe the case will result in a negotiated plea agreement, whether additional time is needed for plea negotiations. In complying with this Order, the parties are DIRECTED to use Magistrate Judge Ray's Criminal Status Report form.

**SO ORDERED**, this 19th day of October, 2026.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA